UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION; NATIONAL CENTER FOR
YOUTH LAW,

               Plaintiffs,

     v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES; ADMINISTRATION FOR CHILDREN
AND FAMILIES; OFFICE OF REFUGEE
RESETTLEMENT,

               Defendants.

Civil Action No._____

---

## COMPLAINT FOR INJUNCTIVE RELIEF

### Preliminary Statement

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the release of agency records related to the federal government's treatment of unaccompanied youth in the custody of the Office of Refugee Resettlement ("ORR") who are pregnant and/or seeking information about or access to reproductive healthcare, including abortion and pregnancy-related care.

2.      These young people are extremely vulnerable—many have fled abuse or torture in their countries of origin and come to the United States without their parents to seek safety; a great number have been sexually abused or assaulted either in their countries of origin or during their long journey to the United States.

3.      While in U.S. custody, the government and its contracted shelters provide for these young people's day-to-day needs, including clothing, food, and medical care. For some, this will involve the need to access reproductive healthcare—including abortion, prenatal care, or birthing services—during the weeks, months, or sometimes years that they are in ORR custody.

4.      Under current law, ORR is required to ensure access to this important healthcare. Unfortunately, the government has previously obstructed and restricted access to reproductive healthcare for these youth. Indeed, in 2017, Plaintiff American Civil Liberties Union Foundation ("ACLUF") sued Defendants after they prohibited unaccompanied immigrant youth in ORR custody from obtaining abortion care. The case settled in 2020 after Defendants adopted a policy to ensure abortion access for these young people. That policy eventually was codified into current regulations. Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34384 (Apr. 30, 2024) (codified at 45 C.F.R. pt. 410).

5.      Plaintiffs seek agency records to ensure that the federal government is fulfilling its legal obligations related to the provision of reproductive healthcare to youth in ORR custody. On February 10, 2025, Plaintiffs ACLUF and the National Center for Youth Law ("NCYL") filed a request for documents (the "Request" or "FOIA Request") under the FOIA from Defendant Administration for Children and Families ("ACF"), a subdivision of Defendant Department of Health and Human Services ("HHS"), but to date have not received any response to the Request.

2

6. Plaintiffs are legally entitled to these documents, which were requested over a year ago. Defendants have far exceeded the statutory and regulatory time limitations to respond.

7. Given that unaccompanied youth are already marginalized and the time-sensitive nature of the healthcare services at issue, it is crucial that the requested documents are disclosed to determine whether these youth are receiving this necessary healthcare as required by law.

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–06.

9. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) because Plaintiff ACLUF's principal place of business is in New York.

## Parties

10. Plaintiff ACLUF is a 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. The ACLUF has filed multiple FOIA requests pertaining to the government's policies. The ACLUF is the litigation and communications arm of the American Civil Liberties Union ("ACLU"). The ACLU is a nationwide, non-profit, non-partisan organization with approximately 1.3 million members, and several million more activists and supporters, dedicated to the constitutional principles of liberty and equality.

3

11.　　Plaintiff NCYL advocates for young people, working to center the voices and experiences of youth and help advance their educational, health, and social wellbeing and opportunities. For more than 50 years, NCYL has fought to ensure that youth's rights, dignity, and autonomy are respected in health, immigration, education, court, and child welfare systems across the United States.

12.　　Defendant HHS is a Department of the Executive Branch of the United States government. HHS is legally responsible for the "care and custody of all unaccompanied children, including responsibility for their detention, where appropriate." 8 U.S.C. § 1232(b)(1). HHS is an agency within the meaning of 5 U.S.C. § 552(f)(1).

13.　　Defendant ACF, a subdivision of HHS, houses ORR, which runs a program to fulfill HHS's obligation for the care and custody of unaccompanied children. ACF is an agency within the meaning of 5 U.S.C. § 552(f)(1).

14.　　Defendant ORR, an office within ACF, runs the Unaccompanied Alien Children Bureau which, through a network of contracted private shelters, provides care and services to all unaccompanied immigrant children referred to it by other federal agencies. *See* 6 U.S.C. § 279(b)(1). ORR is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## Unaccompanied Youth in ORR Custody

15.　　By statutory definition, unaccompanied children are individuals who are under 18 years old, have no legal immigration status, and either have no parent or legal guardian in the United States, or no parent or legal guardian in the United States that is available to provide care and physical custody. 6 U.S.C. § 279(g)(2).

4

16.     They have come to the United States voluntarily, often fleeing violence or abuse, including sexual abuse. They also may have been trafficked for forced sex or labor in other countries or may have endured sexual assault during their long journey to the United States.

17.     Most speak little or no English.

18.     Defendants are legally responsible for the "care and custody of all unaccompanied children" while they are in federal immigration custody. 8 U.S.C. § 1232(b)(1).

19.     Defendant ORR contracts with private entities across the United States to shelter and provide the required care and services to these youth until they are released to a family member or another approved sponsor.

20.     The government reports that in recent months, there were approximately 2,500 unaccompanied youth in ORR custody each month, with approximately one-third of those being girls.[1]

21.     The government also reports that in fiscal year 2025, the average time an unaccompanied youth spent in ORR custody was 117 days (approximately 4 months), which is significantly longer than in prior years.[2] In early 2026, the average length of custody for a child still in care was more than 6 months.[3]

### **Right to Reproductive Healthcare while in ORR Custody**

22.     Current law requires ORR to "ensure that all unaccompanied children in ORR custody will be provided with routine medical and dental care; access to medical services

---

[1] *Data*, Off. of Refugee Resettlement (last updated Apr. 10, 2026), https://acf.gov/orr/about/ucs/facts-and-data [https://perma.cc/U5T6-NB3P].
[2] *Id.*
[3] *Id.*

requiring heightened ORR involvement . . . ; family planning services; and emergency healthcare services." 45 C.F.R. § 410.1307(a). "Family planning services" is defined to include, but is not limited to, FDA-approved contraceptives (including emergency contraception), pregnancy testing and non-directive options counseling, and testing and treatment for sexually transmitted infections. *Id.* § 410.1001. "Medical services requiring heightened ORR involvement" is defined to include abortion. *Id.*

23.    Upon information and belief, ORR administers pregnancy tests at the Initial Medical Examination, which is required to occur within two business days of admission into ORR care. *See generally id.* § 410.1307(b)(2).

24.    For some youth, the ORR-administered pregnancy test is how they discover they are pregnant. Access to non-directive options counseling and the option to access abortion care is critical for these individuals.

25.    Care providers contracted by ORR are required to notify federal staff "within 24 hours of an unaccompanied child's need or request for medical services requiring heightened ORR involvement," including abortion, "or the discovery of a pregnancy." *Id.* § 410.1307(d).

26.    ORR is prohibited from "prevent[ing] unaccompanied children in ORR care from accessing healthcare services, including medical services requiring heightened ORR involvement," such as abortion, "and family planning services." *Id.* § 410.1307(c).

27.    ORR has an affirmative obligation to "make reasonable efforts to facilitate access to those services if requested by the unaccompanied child." *Id.* This explicitly includes providing "transportation across State lines and associated ancillary services if

necessary to access" the medical care, "regardless of whether Federal appropriations law prevents ORR from paying for the medical care itself." *Id.* § 410.1307(c)(2).

28.    When making initial placement determinations, as outlined in 45 C.F.R. § 410.1103, ORR is required to "consider the child's individualized needs and any specialized services or treatment required or reasonably requested," which includes considering "medical specialists, family planning services, and medical services requiring heightened ORR involvement," like abortion. *Id.* § 410.1307(c)(1)(i).

29.    More specifically, ORR Field Guidance #21 requires "prioritiz[ing] placement of pregnant [minors] and [minors] who are victims of sexual-based crimes in states without abortion bans and with broad access to reproductive health care for minors."[4]

30.    Regulations further provide that "[i]f an appropriate initial placement is not immediately available or if the . . . need or request . . . is identified after the Initial Medical Exam, care providers shall immediately notify ORR and ORR shall, to the greatest extent possible, transfer the unaccompanied child . . . to an [appropriate] ORR program." 45 C.F.R. § 410.1307(c)(1)(ii).

### ORR's History of Obstructing Access to Reproductive Healthcare

31.    After over a decade of litigation by Plaintiff NCYL and others, stemming from inhumane conditions in which the government was detaining immigrant youth, in 1997, the landmark *Flores* Agreement was reached, which established national standards for the detention, treatment, and prompt release of youth in federal immigration custody.

---

[4] Off. of Refugee Resettlement, Field Guidance #21 – Compliance with *Garza* Requirements and Procedures for Unaccompanied Children Needing Reproductive Healthcare 2 (2022), https://www.acf.hhs.gov/sites/default/files/documents/orr/field-guidance-21.pdf [https://perma.cc/JU9N-SK28].

32.    The *Flores* Agreement required the government to provide unaccompanied youth with "[a]ppropriate routine medical and dental care, family planning services, and emergency health care services." Stipulated Settlement Agreement, *Flores v. Reno*, No. CV-85-4544-RJK(Px), at Ex. 1 § A(2) (C.D. Cal. Jan. 17, 1997).

33.    Despite these explicit requirements, at least over the last two decades, ORR has a history of obstructing access to reproductive healthcare, including abortion.

34.    In 2008, after a contracted ORR care provider ensured access to abortion and contraception for at least one teenager in its custody, ORR implemented a written policy that (a) mandated heightened ORR involvement in surgical and medical procedures, particularly abortion; (b) prohibited contracted care providers from taking action in such cases without direction and approval from ORR staff; (c) prohibited ORR staff and contracted care providers from providing consent for a youth's abortion; and (d) prohibited federal funds from being expended for an abortion, except in limited circumstances.

35.    ORR also wrote a letter to the care provider explaining steps it should have taken to get approval from ORR for the abortion; however, the agency noted in that letter that even if the care provider had taken those steps, it would have denied the teen's request for an abortion.

36.    In other words, in 2008, ORR stated that it would have vetoed a young woman's decision to have an abortion if it had known about her request for the medical care and reacted by implementing policies that would allow the agency to delay or deny future unaccompanied youth's access to abortion while in federal custody.

8

37.     In 2017, the first Trump Administration implemented a policy that outright denied pregnant unaccompanied youth access to unbiased information about their pregnancy options; coerced them to carry their pregnancies to term; and blocked them from going to any abortion-related appointments.

38.     Upon learning of ORR's internal policy to deny all abortion requests, Plaintiff ACLUF successfully sued the federal government for infringing upon the rights of the young people in ORR's care. *See J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019). It was only through this years-long litigation that pregnant youth in ORR custody were able to access timely and confidential abortion care during the first Trump Administration.

39.     After several years of the policy being preliminarily enjoined by courts, the ACLU settled the case, with the Trump Administration agreeing to adopt a new policy that it would not interfere with detained immigrant youth's access to abortion and related services.

40.     Based in part on its obligations under that settlement, the government adopted the current regulations and ORR Field Guidance #21, both discussed above, that ensure access to reproductive healthcare for youth in ORR custody. The current regulations also "implement the substantive requirements of the [*Flores* Agreement] as they pertain to ORR" and are "consistent with the [Homeland Security Act] and [Trafficking Victims Protection Reauthorization Act]." 89 Fed. Reg. at 34385.

41.     During the first year of the second Trump Administration, the Department of Justice's Office of Legal Counsel issued a Slip Opinion asserting that the Hyde Amendment prohibits what ORR regulations currently require: providing transportation and other ancillary services to unaccompanied immigrant youth for the purpose of

obtaining an abortion.[5] This is a departure from that same office's prior interpretation of the Hyde Amendment as prohibiting only the use of federal funds to pay for the abortion procedure itself.

42.    In January 2026, HHS announced that it would amend current regulations "to accord with the Hyde Amendment."[6] The text of the proposed rule has yet to be made public.

43.    Recent news reports indicate that ORR may be placing many pregnant youth in Texas, a state with extremely restrictive abortion laws that limit access to abortion and miscarriage care, despite the regulation and policy that require ORR to prioritize placement of pregnant youth in states without abortion bans.[7]

44.    Plaintiffs' FOIA Request is essential in assessing whether the government has obstructed access to reproductive healthcare, as Defendants did in President Trump's first term.

### The FOIA Request and the Agency's Response

45.    In February 2025, Plaintiffs filed the FOIA Request with Defendants seeking, *inter alia*, agency records from January 1, 2023, to the present related to unaccompanied youth's pregnancy identification, requests for and access to abortion, requests for and access to pre-natal care and childbirth, requests for and access to contraception, and the

---

[5] Reconsidering the Application of the Hyde Amendment to the Provision of Transportation for Women Seeking Abortions, 49 Op. O.L.C. (July 11, 2025) (slip op. at 11), https://www.justice.gov/olc/media/1408241/dl [https://perma.cc/A6TT-2PK2].

[6] *Pending EO 12866 Regulatory Review: Unaccompanied Alien Children Program Foundational Rule; Updates to Accord with the Hyde Amendment*, Off. of Info. & Reg. Affs., https://www.reginfo.gov/public/do/eoDetails?rrid=1252114 [https://perma.cc/63S7-4W4Q] (last visited Apr. 10, 2026).

[7] Mark Betancourt, *Trump Administration Is Sending Pregnant Migrant Girls to South Texas Shelter Flagged as Medically Inadequate*, KUT News (Feb. 11, 2026), https://www.kut.org/politics/2026-02-11/texas-trump-immigration-pregnant-migrants-shelter [https://perma.cc/DZ45-STAN].

use of restraints on pregnant unaccompanied youth while in ORR custody. *See* Ex. A at 3–7. Plaintiffs' Request makes clear that they will "accept records . . . that have been redacted pursuant to the Health Insurance and Portability Accountability Act or other statutes or regulations protecting the privacy of individual minors" and do "not seek any personally identifying information of [unaccompanied children]." *Id.* at 2.

46.     On February 10, 2025, Plaintiffs sent the FOIA Request to Defendants through the U.S. Postal Service's First Class Mail, which delivers mail within five days.

47.     Prior to mailing the Request, on both February 7 and 10, 2025, Plaintiffs had also attempted to submit the Request via HHS's online FOIA portal but it was not functioning.

48.     After mailing the Request, on February 11, 2025, Plaintiffs also submitted a copy of the Request by email to Charmane Blalock, a Government Information Specialist at ACF's FOIA Division, who Plaintiffs were in contact with regarding the government's production of earlier records under a 2023 FOIA request on the same topic. *See* Ex. B.

49.     On March 5, 2025, Plaintiffs followed up by email with Ms. Blalock regarding the Request, including asking for a case number. *See* Ex. C.

50.     On March 27, 2025, Plaintiffs again followed up by email with Ms. Blalock regarding the Request. *See* Ex. D.

51.     On April 25, 2025, Plaintiffs again followed up by email with Ms. Blalock regarding the Request. *See* Ex. E.

52.     To date, Plaintiffs have received no response or documents whatsoever, including any explanation of Defendants' withholding of the records. Indeed, Plaintiffs have received no indication that a search is even underway. For example, Plaintiffs have

not received notice from Defendants that they have assigned a case number to the Request.

**Defendants Failed to Fulfill Their Statutory and Regulatory Obligations**

53.    Defendants have failed to comply with the time limits imposed by the FOIA statute and their own agency regulations.

54.    HHS regulations require the agency to acknowledge all FOIA requests in writing within 10 working days after receipt. 45 C.F.R. § 5.24(a).

55.    The FOIA statute requires agencies to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of [a FOIA] request whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i); *see also* 45 C.F.R. § 5.24(b). The agency must then "immediately notify the person making [the] request of . . . such determination and the reasons therefor[,]" and provide information regarding the right to seek assistance from the FOIA Public Liaison and the right to administratively appeal an adverse decision. 5 U.S.C. § 552(a)(6)(A)(i).

56.    After a determination is made, the agency must "make reasonable efforts to search for the records in electronic form" and "make the records promptly available" to the requester. *Id.* § 552(a)(3)(A), (C).

57.    Where "the agency fails to comply with the applicable time limit," the requester "shall be deemed to have exhausted [their] remedies with respect to such request." *Id.* § 522(a)(6)(C)(i).

58.    Over a year after Plaintiffs submitted their FOIA Request, Defendants have not acknowledged receipt of Plaintiffs' Request, made a determination on that Request, or made any records available.

59.     Plaintiffs therefore have instituted this action to ask the Court to order Defendants to disclose the requested information.

**Plaintiffs' Entitlement to a Waiver or Reduction of Processing Fees**

60.     In the FOIA Request, Plaintiffs also asked for a waiver or reduction of document search, review, and duplication fees because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 45 C.F.R. § 5.54(a).

61.     As alleged above, news accounts reflect the public interest in the records Plaintiffs seek. The records sought in the Request will significantly contribute to the public understanding of the operations and activities of HHS and its contractors. *See* 45 C.F.R. § 5.54(b). In addition, disclosure is not in the commercial interest of ACLUF or NCYL. *See id.* Plaintiffs will evaluate the disclosed documents and, depending on what is contained in the documents, may well disseminate the information to the public. If the ACLUF and NCYL publicly disclose information obtained through the FOIA, they will do so at no cost to the public.

62.     Plaintiff ACLUF is also entitled to a waiver or reduction of fees because the ACLUF qualifies as a "representative of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 45 C.F.R. § 5.53(b).

63.     The ACLUF is a representative of the news media for the purposes of FOIA because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.  In addition, as noted, Plaintiffs do not seek the requested

13

information for commercial reasons. The ACLUF and NCYL summarize, explain, and disseminate the information they gather through FOIA requests at no cost to the public.

64. Additionally, where HHS "fail[s] to comply with the FOIA's time limits in which to respond to a request, [it] may not charge search fees, or, in the instances of" requests from members of the news media, "may not charge duplication fees," except in unusual or exceptional circumstances. 45 C.F.R. § 5.53(d)(1).

**Causes of Action**

65. Plaintiffs repeat and reallege paragraphs 1–64.

66. Defendants' failure to timely make a determination on Plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and HHS's corresponding regulation, 45 C.F.R. § 5.24.

67. Defendants' failure to make a reasonable effort to search for records responsive to the Plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3)(C), and HHS's corresponding regulation, 45 C.F.R. § 5.24.

68. Defendants' failure to promptly make available the records sought by Plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and HHS's corresponding regulation, 45 C.F.R. § 5.24.

69. Defendants' failure to grant Plaintiffs' request for a waiver of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendants' corresponding regulations, 45 C.F.R. §§ 5.54 and 5.53(d)(1).

70. Defendants' failure to grant Plaintiffs' requests for a reduction of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendants' corresponding regulations, 45 C.F.R. § 5.53(b) and (d)(1).

14

## Requested Relief

WHEREFORE, Plaintiffs pray that this Court:

1. Order Defendants to process all requested records;

2. Order Defendants to conduct a thorough search for all responsive records;

3. Order Defendants to promptly disclose the requested records in their entirety, except for the disclosure of the names or identifying information of individuals who have sought reproductive health care, and make copies available to Plaintiffs;

4. Enjoin Defendants from charging Plaintiffs fees for the processing of their request;

5. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

6. Grant such other relief as the Court may deem just and proper.


Respectfully submitted,

s/Brigitte Amiri

Chelsea Tejada*
Brigitte Amiri (BA-8497)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2633
Fax:    (212) 549-2652

Mishan Wroe**
National Center for Youth Law
428 13th Street, Fl. 5
Oakland, CA 94612
Phone: (510) 920-3497
Fax:    (510) 835-8099

15

Nina Monfredo***
National Center for Youth Law
818 Connecticut Ave. NW, Suite 425
Washington, D.C. 20006
Phone: (202) 862-8502
Fax:     (510) 835-8099

Anya Weinstock*
New York Civil Liberties Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax:     (212) 607-3318

* pending application for SDNY admission
** motion for *pro hac vice* forthcoming
*** application for SDNY admission forthcoming

16